▬ In the Matter of Christy C., a Person Alleged to be a Juvenile Delinquent, Appellant. [25 NYS3d 8]—

Order of disposition, Family Court, New York County (Mary E. Bednar, J., at suppression hearing; Susan R. Larabee, J., at fact-finding and disposition), entered on or about May 31, 2013, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that she committed an act that, if committed by an adult, would constitute the crime of false personation, and placed her on probation for a period of 13 months, affirmed, without costs.

At the time of her arrest, appellant, then 14 years of age, gave a false name, age and address to the police. A police officer had approached appellant at the Exchange Place Path station in Jersey City, New Jersey, as a possible abandoned child. Appellant, who was a runaway child from Harlem, New York, continued her false assertions after being warned by a police officer that providing false information subjected her to criminal liability. On appeal, appellant challenges the denial of the motion to suppress her statements to the police, the finding that she committed false personation, and her adjudication as a juvenile delinquent in need of treatment and supervision.

The court properly denied appellant's motion to suppress her statement to the police, in which she gave a false name and date of birth, resulting in the false personation charge (Penal Law § 190.23). The police had probable cause to believe appellant was a runaway (*see Matter of Marrhonda G.*, 81 NY2d 942 [1993]). The then 14-year-old appellant, who appeared to be as young as 13, was alone in a PATH station in New Jersey, but she vaguely claimed to live in "upstate" New York. In addition, she had a bruised eye and was wearing provocative clothing, suggesting the possibility of some kind of sexual exploitation. The police were entitled to ask pedigree questions without *Miranda* warnings, even though an officer warned appellant, as required by the false personation statute, that providing false information would result in an additional charge (*see People v Ligon*, 66 AD3d 516 [1st Dept 2009], *lv denied* 14 NY3d 889 [2010]). We have considered and rejected appellant's remaining suppression claims. In light of the foregoing, we find it unnecessary to reach the presentment agency's argument that a misrepresentation of identity made in violation of Penal Law § 190.23 is not a statement subject to suppression.

The finding that appellant committed false personation was supported by legally sufficient evidence, and was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342,

348-349 [2007]). There is no basis for disturbing the court's credibility determinations. The dissent argues that, "[b]ut for [the police officer's] warning, there would have been no . . . crime." There was, however, nothing nefarious about the police officer's conduct. The officer properly warned appellant in accordance with Penal Law § 190.23 of the consequences of providing false pedigree information. Further, the evidence supports the inference that appellant acted with the requisite knowledge and intent.

Upon disposition, the court properly exercised its discretion when it denied appellant's request for an adjournment in contemplation of dismissal, and instead appropriately adjudicated her a juvenile delinquent and placed her on a 13-month period of probation. This was the least restrictive alternative consistent with appellant's needs and the community's need for protection (see Matter of Katherine W., 62 NY2d 947 [1984]). Appellant's history, which included violent behavior, toward her family, in placement, in school, and in the streets, aggressive behavior toward facility staff, a threat to kill a fellow student, truancy, promiscuity, and drug and alcohol abuse, warranted a 13-month period of supervision.

Appellant's record of violent behavior, truancy, promiscuity, and drug and alcohol abuse establishes that the court had ample reason to reject the Department of Probation's recommendations, and demonstrates that an adjudication of supervised adjournment in contemplation of dismissal (ACD), as the dissent posits, would have been unsuitable and inappropriate. We reject the dissent's suggestion that appellant's "past behavioral, disciplinary and psychiatric problems" raised herein, and taken into account by the court, should have been ignored because of improvements made by appellant after being returned home. While appellant did not run away from home again, took her medications and was enrolled in school, it is significant and cannot be ignored, that appellant missed well over half of the school days in March and April 2013; she was suspended for not attending classes; and, again tested positive for marijuana. The dissent takes at face value that appellant's poor school attendance record in 2013 must be attributed to allegations of "peer bullying." Appellant's 2013 truancy, however, was not aberrant; it was consistent with her history, as she also had only a 50% school attendance rate for the spring 2011 and fall 2012 terms.

In addition, the dissent also fails to consider that the psychologist who prepared the Mental Health Studies, at the behest of the court, disagreed with the Department of Proba-

tion's recommendation of an ACD. In his final dispositional report, the psychologist opined that, while there were "some improvements at home," appellant was still at a significant increased risk of future aggression and substance abuse. Given this genuine concern,* the evaluating psychologist's final recommendation was a disposition of probation. These facts and circumstances outweighed appellant's lack of prior record and other mitigating factors that appellant cites. Concur—Mazzarelli, J.P., Renwick and Manzanet-Daniels, JJ.

Andrias, J., dissents in a memorandum as follows: By order of disposition dated May 13, 2013, the Family Court adjudicated appellant a juvenile delinquent on the ground that she did an act, which if done by an adult, would constitute the crime of false personation, a class B misdemeanor (Penal Law § 190.23). The court placed respondent on "level III probation" under the supervision of the Probation Department of the County of New York for 13 months and imposed conditions including that she cooperate with the St. Luke's Cares School and New Beginnings Program, undergo random drug testing, attend school, obey her mother, have no further difficulties at home, in school or in the community, and have no involvement with drugs, alcohol or gangs.

The majority finds that the court providently exercised its discretion when it denied appellant's request for an adjournment in contemplation of dismissal (ACD). However, based on the facts and circumstances as they existed at the time of the Family Court proceeding, a supervised ACD pursuant to Family Court Act § 315.3 (2) would have been the least restrictive alternative available consistent with appellant's needs and the community's need for protection. Therefore, I dissent from the order of disposition adjudicating appellant a juvenile delinquent and placing her on probation for a period of 13 months.

"An [ACD] is an adjournment of the proceeding, for a period not to exceed six months, with a view to ultimate dismissal of the petition in furtherance of justice" (Family Ct Act § 315.3 [1]). An ACD may be subject to terms and conditions defined in the rules of court, including "supervision by the probation service" (Family Ct Act § 315.3 [2]).

---

* The record indeed establishes that the psychologist's concern proved to be a prescient risk assessment because a few months after being adjudicated a juvenile delinquent, appellant violated the terms of her probation by failing to obey the lawful commands of her mother. As a result, appellant was placed with ACS in a Close to Home Facility for six months, with no credit for time served. Appellant took no appeal from the second order. Of course, such outcome was not known by the Family Court at the time of the adjudication nor should it be considered in the disposition of this appeal.

In rejecting appellant's request for an ACD, the court stated at the dispositional hearing:

"I do not think an ACD is appropriate in any way[.] I agreed with [counsel for the presentment agency] that your transition is going pretty well but still very new. And your lawyer keeps pointing out this is a misdemeanor but is much more serious than the B misdemeanor would appear to be.

"You have been sexually exploited, you were—you had a black eye when the police found you, you lied about your age and so on."

However, as is more thoroughly discussed below, the court's conclusion that appellant had been sexually exploited is rank speculation and there is evidence in the record to the contrary. Further, appellant had no prior juvenile delinquency adjudication and was 14 years old when she was charged with acts that, if committed by an adult, would constitute the crime of false personation, a relatively minor nonviolent offense. Moreover, the circumstances leading to the charge itself, in which a detention for appellant's safety, rather than an investigation of a crime, ultimately led to appellant giving false pedigree information, were not egregious.

Appellant was approached at the PATH station in Jersey City by a police officer, who believed she was a runaway, for the sole purpose of reuniting her with her family, without any nonspeculative belief that she had done anything illegal. She told the officer that her name was Christy or Crissy Lopez and that she was born in 1997. When her identity could not be confirmed, the officer was instructed to take her to the PATH police command in Jersey City for further investigation, where she was treated for a bruise over her eye. After appellant gave another officer an address for a family residence in Harlem, she was eventually transported to the Port Authority Bus Terminal Police Command Youth Service Unit in New York, rather than to the hospital for further treatment.

The acts constituting false personation occurred after appellant had been detained for an extended period of time, questioned and shuffled from one police unit to another in New Jersey and New York. At the Port Authority precinct in New York City, a youth service officer told appellant that "she wasn't in any trouble" and that he "just needed to confirm her identity because of the amount of missing children that we encounter." Nevertheless, appellant continued to maintain that her name was Chrissy Lopez and that she was born in 1997 (instead of 1998), even though the officer told her that she could be charged with false personation and placed under arrest if she

was not honest with him. But for that "warning," there would have been no acts constituting the crime of false personation (Penal Law § 190.23), which is the sole basis for this proceeding.

Significantly, although appellant gave false pedigree information, she provided a specific address in Harlem where her mother lived, which led to the discovery of her true age and identity and the reunification with her family. While appellant's misstatements to police are not to be condoned, a report of the Family Court Mental Health Service states that appellant explained that she provided the false pedigree information because she did not want to be returned to placement.

The court's finding that appellant had been sexually exploited, based on the fact that she had a "black eye" when the police saw her in the bus station, is speculative at best. While there may have been a suspicion of sexual exploitation, it was never confirmed. Indeed, at the dispositional hearing, counsel stated that one of the concerns in getting appellant into the CARES program was that it required a record of sexual exploitation that had not been established for appellant.

Although the Department of Probation reports and the mental health studies before the court indicated that appellant had behavioral and psychiatric issues, the reports also indicated that appellant's conduct had substantially improved after she was returned to her mother's custody, including that she did not run away from home, was following her mother's house rules, was taking her medications, was attending counseling with her family, and was attending school until she was bullied in class by a male student who hit her. Although the three Department of Probation reports issued before the adjudication stated that appellant needed to be in a highly structured and supervised environment that could provide her with educational support, mental health services, counseling, and peer leadership development, the reports nevertheless recommended an ACD. This recommendation should have been followed.

The majority disagrees, stating that "[a]ppellant's history, which included violent behavior toward her family, in placement, in school, and in the streets, aggressive behavior toward facility staff, a threat to kill a fellow student, truancy, promiscuity, and drug and alcohol abuse, warranted a 13-month period of supervision." Emphasizing that the mental health reports recommended probation, the majority takes the position that the improvements in appellant's behavior were diminished by her renewed truancy and a positive test for marijuana.

I disagree. Both the probation and mental health reports establish that there had been a major improvement in appellant's behavior after the petition was filed.

The February 19, 2013 probation report recounted each of appellant's past behavioral, disciplinary and psychiatric problems raised by the majority, as well as her need for a highly structured and supervised environment. However, it concluded that appellant had "the potential to change her previous behavior patterns for the better," and recommended an ACD.

The March 22, 2013 probation report stated that after the Yonkers Residential Center was released from its obligations, appellant was returned home for a week. Appellant's mother advised probation that while she was home, appellant was respectful and obedient, and that the mother was willing to have appellant live with her.

The May 31, 2013 probation report indicated that the mother had stated that appellant had been doing very well after she was returned to the home. The mother advised probation that appellant had not exhibited any behavioral problems, had attended scheduled appointments, had taken her medication, and had not tried to run away. The report also stated that according to her therapist at New Beginnings, appellant had been participating in individual and family counseling once or twice a week since March 20th. During these sessions, appellant was receptive and put in a lot of effort. Although issues remained, the family was making significant progress. Thus, the report concluded that "[d]ue to the present services in place, and [appellant]'s positive progress at home, the recommendation remains as an ACD."

The March 14, 2013 mental health report, while recommending placement in a residential setting with the goal of returning appellant to the community, stated that appellant, while in placement, had been taking her medication and had a relatively positive relationship with her mother, who had a history of seeking and participating in services for appellant. It also noted that appellant had begun evincing early behavioral improvement, including abstinence from substances and participation in therapy and mental health treatment, and that she had not absconded.

An update to the mental health report noted that the mother had reported "big progress" since appellant returned to the home. The mother stated that appellant was happy and had not engaged in delinquent behavior, that she had new friends that were a positive influence, and that she was compliant with prescribed medication and attending mental health

counseling. The mother acknowledged that while appellant had enrolled in school, she stopped attending after several weeks when she was bullied by a male peer and the school would not put her in a different class. However, the mother described efforts to get appellant into the CARES program.

The report also indicated that appellant had corroborated that things were good at home and that she was complying with her mother's rules. Appellant denied recent exposure to domestic violence or physical or sexual victimization, gang involvement and substance abuse (although she later tested positive for marijuana in one of several drug tests administered during the pendency of this proceeding).

In its updated conclusion, the report acknowledged that since her release from placement in March 2013 and return to her mother's home, appellant "has sustained an early pattern of mostly adequate adjustment. Many of [appellant]'s conduct disordered behaviors have not been present and she has reportedly evinced an improvement in mood and has abstained from substances." While the report recommended that appellant be placed on probation to provide oversight, supervision, and monitoring, it did not specify a time frame.[1]

On this record, adjudicating appellant a juvenile delinquent and placing her on probation for a period of 13 months was an improvident exercise of discretion. While appellant's one positive test for marijuana and renewed truancy, even if attributable to peer bullying, demonstrate that she requires supervision, under the Uniform Rules for the Family Court (22 NYCRR) § 205.24 (a) the court could have imposed a supervised ACD directing the respondent to:

"(1) attend school regularly and obey all rules and regulations of the school;

"(2) obey all reasonable commands of the parent or other person legally responsible for respondent's care;

"(3) avoid injurious or vicious activities;

"(4) abstain from associating with named individuals;

---

1. The majority notes that mental health's concerns "proved to be a prescient risk assessment" because appellant violated her probation two months after she was adjudicated a juvenile delinquent. However, as the majority acknowledges, the propriety of the Family Court's disposition must be assessed based on the record that existed as of the time of the dispositional hearing, not on appellant's behavior thereafter. In any event, if appellant had been given an ACD, rather than being branded a juvenile delinquent, it would have given her a greater incentive to continue and build upon the progress she had made, rather than relapsing into bad behavior.

"(5) abstain from visiting designated places;

"(6) abstain from the use of alcoholic beverages, hallucinogenic drugs, habit-forming drugs not lawfully prescribed for the respondent's use, or any other harmful or dangerous substance;

"(7) cooperate with a mental health, social services or other appropriate community facility or agency to which the respondent is referred; . . .

"(10) cooperate in accepting medical or psychiatric diagnosis and treatment, alcoholism or drug abuse treatment or counseling services and permit an agency delivering that service to furnish the court with information concerning the diagnosis, treatment or counseling;

"(11) attend and complete an alcohol awareness program established pursuant to section 19.25 of the Mental Hygiene Law;

"(12) abstain from disruptive behavior in the home and in the community;

"(13) abstain from any act which, if done by an adult, would be an offense; and

"(14) comply with such other reasonable terms and conditions as may be permitted by law and as the court shall determine to be necessary or appropriate to ameliorate the conduct which gave rise to the filing of the petition or to prevent placement with the Commissioner of Social Services or the Office of Children and Family Services."

This would have provided appellant with each and every one of the conditions the court included in its dispositional order as a condition of appellant's probation, without adding the stigma of a juvenile delinquency adjudication (*see Matter of Clarissa V.*, 117 AD3d 494, 494 [1st Dept 2014] ["While appellant had truancy issues at school, at the time of the disposition she was employed, was being treated for depression, and was generally making progress. Based on all these factors, there is no reason to believe that appellant needed any supervision beyond that which could have been provided under an ACD"]; *Matter of Justin Charles H.*, 9 AD3d 316, 317 [1st Dept 2004]). Thus, the imposition of a supervised ACD would have been the least restrictive alternative available consistent with appellant's needs and those of the community for this first, relatively minor offense by a troubled teenager who had no prior delinquency adjudication and was doing better at home and in therapy at the time of the dispositional hearing (*see* Family Ct Act § 352.2 [2] [a]; *Matter of Besjon B.*, 99 AD3d 526 [1st Dept 2012]; *Mat-*

*ter of Tyvan B.*, 84 AD3d 462 [1st Dept 2011]; *Matter of Joel J.*, 33 AD3d 344 [1st Dept 2006]).[2]

**2.** Even if supervision was required for more than six months, the court could have imposed the less restrictive disposition of a 12-month conditional discharge (Family Ct Act § 352.2 [1] [a]), rather than 13 months probation.